## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM BALLARD,<br><br>    Plaintiff,<br><br>  v.<br><br>CONCERT PHARMACEUTICALS, INC., RICHARD H. ALDRICH, THOMAS G. AUCHINCLOSS, JR., JESPER HØILAND, PETER BARTON HUTT, WILFRED E. JAEGER, ROGER D. TUNG, and CHRISTINE VAN HEEK,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff William Ballard ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Plaintiff against Concert Pharmaceuticals, Inc. ("Concert" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Sun Pharmaceutical Industries Limited ("Sun Pharma").[1]

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

2.   On January 19, 2023, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Sun Pharma and Foliage Merger Sub, Inc. ("Purchaser"). The Merger Agreement provides that Concert stockholders will have the right to receive $8.00 in cash and one contingent value right ("CVR") which represents the contractual right to receive contingent payments of up to $3.50 in cash if certain milestones are achieved, per share of Concert common stock, via a tender offer (the "Tender Offer").[2]

3.   The Company's corporate directors subsequently authorized the February 2, 2023, filing of a materially incomplete and misleading 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the SEC. The Solicitation Statement, which recommends that Company stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Solicitation Statement in violation of the Exchange Act.

4.   It is imperative that the material information omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the forthcoming Tender Offer deadline, so that they can properly exercise their rights, among other things.[3]

5.   For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the

---

[2] Purchaser commenced the Tender Offer on February 2, 2023.

[3] The Tender Offer is currently scheduled to expire at one minute after 11:59 p.m., New York City time, on March 3, 2023.

defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Concert common stock.

10. Defendant Concert is a Delaware corporation with its principal executive offices located at 65 Hayden Avenue, Suite 3000N, Lexington, Massachusetts 02421. Concert's shares trade on the Nasdaq Global Market under the ticker symbol "CNCE." Concert is a clinical stage biopharmaceutical company focused on developing novel small molecule drugs for the treatment of autoimmune diseases. The Company's lead product candidate is deuruxolitinib (which Concert previously referred to as CTP-543), a novel, deuterated, oral Janus Kinase 1 and Janus Kinase 2 inhibitor. Concert has successfully completed two Phase 3 clinical trials of deuruxolitinib for the treatment of adults with moderate to severe alopecia areata, a serious

autoimmune dermatological disease that results in patchy or complete scalp hair loss. Concert announced it intends to file a New Drug Application with the U.S. Food and Drug Administration with respect to deuruxolitinib in the first half of 2023 and projects the commercial launch of deuruxolitinib in 2024. Concert has strategic collaborations with Avanir Pharmaceuticals, Inc., Jazz Pharmaceuticals, Inc., Cipla Technologies and Processa Pharmaceuticals.

11. Defendant Richard H. Aldrich is a co-founder of Concert and is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Thomas G. Auchincloss, Jr. is and has been a director of the Company at all times relevant hereto.

13. Defendant Jesper Høiland is and has been a director of the Company at all times relevant hereto.

14. Defendant Peter Barton Hutt is and has been a director of the Company at all times relevant hereto.

15. Defendant Wilfred E. Jaeger is and has been a director of the Company at all times relevant hereto.

16. Defendant Roger D. Tung has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

17. Defendant Christine van Heek is and has been a director of the Company at all times relevant hereto.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On January 19, 2023, Sun Pharma and the Company jointly announced in relevant part:

> MUMBAI & LEXINGTON, Mass.--(BUSINESS WIRE)--Sun Pharmaceutical Industries Limited (Reuters: SUN.BO, Bloomberg: SUNP IN, NSE: SUNPHARMA, BSE: 524715 (together with its subsidiaries and/or associated companies, "Sun Pharma")) and Concert Pharmaceuticals, Inc. (NASDAQ: CNCE) ("Concert") today announced that they have executed a definitive agreement under which Sun Pharma will acquire all outstanding shares of Concert through a tender offer for an upfront payment of $8.00 per share of common stock in cash, or $576 million in equity value. Concert stockholders will also receive a non-tradeable contingent value right (CVR) entitling holders to receive up to an additional $3.50 per share of common stock in cash, payable upon deuruxolitinib achieving certain net sales milestones within specified periods, subject to the terms and conditions contained in a contingent value rights agreement detailing the terms of the CVRs. The transaction was approved by the Boards of Directors of both companies.
>
> The upfront payment of $8.00 per share of common stock in cash represents a premium of approximately 33% to Concert's 30-day volume weighted average price as of January 18, 2023, the last trading day prior to today's announcement.
>
> Concert is a late-stage biotechnology company pioneering the use of deuterium in medicinal chemistry. Concert has an extensive patent portfolio, including its lead product candidate deuruxolitinib – an oral inhibitor of Janus kinases JAK1 and JAK2 for the treatment of Alopecia Areata, an autoimmune dermatological disease – which is in late-stage development. Concert has completed the evaluation of the efficacy and safety of deuruxolitinib in adult patients with moderate to severe Alopecia Areata in its THRIVE-AA Phase 3 clinical program and two open label, long-term extension studies are ongoing in North America and Europe. Sun Pharma's immediate focus would be to follow Concert's plan to submit a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA) in the first half of 2023.
>
> Alopecia Areata is an autoimmune disease in which the immune system attacks hair follicles, resulting in partial or complete loss of hair on the scalp and body. Alopecia Areata may affect up to 2.5% of the United States and global population during their lifetime[1,2,3]. The scalp is the most commonly affected area, but any hair-bearing site can be affected alone or together with the scalp. Onset of the disease can occur throughout life and affects both women and men.

5

Alopecia Areata can be associated with serious psychological consequences, including anxiety and depression. There are currently limited treatment options available for Alopecia Areata.

"Sun Pharma is building a global Dermatology and Ophthalmology franchise and aims to be a preferred development and commercial partner in these therapies worldwide. The acquisition of Concert adds a late-stage, potential best-in-class treatment for Alopecia Areata in deuruxolitinib," said Abhay Gandhi, CEO North America, Sun Pharma. "There is a significant unmet need in the Alopecia Areata space and we aim to build on Concert's commitment to supporting the Alopecia Areata patient community. We are well-positioned to successfully bring this product to market globally. I look forward to welcoming the exceptionally talented Concert team who have worked tirelessly to develop the product to bring it to market."

"We are pleased to enter into this exciting transaction with Sun Pharma, which delivers substantial value to our shareholders and is the outcome of a thorough review process overseen by the Concert Board," stated Roger Tung, Ph.D., President and CEO of Concert. "Our mission at Concert has always been to translate innovative science to clinical solutions in order to meaningfully improve patients' lives. We are proud to see our team's accomplishment – creating a valuable new drug candidate for a major, underserved disease – appropriately recognized and valued by Sun Pharma as a means to expand their ongoing, international commitment to dermatology. I am confident that this transaction will maximize value for our shareholders and enhance access to deuruxolitinib for patients with Alopecia Areata."

**Transaction Terms and Timeline to Closing**

Under the terms of the merger agreement, Sun Pharma will promptly commence a tender offer to acquire all outstanding shares of Concert common stock. Concert stockholders will be offered an upfront payment of $8.00 per share of common stock in cash. Concert's Board of Directors unanimously recommends that Concert stockholders tender their shares in the tender offer.

Concert stockholders will also receive a non-tradeable CVR, which entitles Concert stockholders to receive up to an additional $3.50 per share of common stock in cash, payable upon deuruxolitinib achieving certain net sales milestones within specified periods, subject to the terms and conditions contained in the contingent value rights agreement detailing the terms of the CVRs. These milestones, subject to terms and conditions as specified in the contingent value rights agreement, include: (i) $1.00 per share of common stock, payable the first time that in any fiscal year between the time of the first commercial sale of deuruxolitinib in the U.S. and March 31, 2027, net sales of deuruxolitinib is equal to or exceeds $100 million, and (ii) an additional $2.50 per share of

common stock, payable the first time that in any period of four consecutive fiscal quarters between the time of the first commercial sale of deuruxolitinib in the U.S. and December 31, 2029, net sales of deuruxolitinib is equal to or exceeds $500 million. There can be no assurance that any payments will be made with respect to the CVRs.

The transaction is expected to be completed in the first quarter of 2023. The transaction is subject to the tender of a majority of the outstanding shares of Concert's common stock, as well as the receipt of applicable regulatory approvals and other customary closing conditions. Following the successful closing of the tender offer, Sun Pharma will acquire all remaining shares of Concert that are not tendered into the tender offer and all shares of Concert's preferred stock through a second-step merger at the same price of $8.00 per share of common stock, plus one non-tradeable CVR. The merger will be effected as soon as practicable after the closing of the tender offer.

For the nine-month period ending September 2022, Concert reported total revenue of $29 thousand and a net loss of $90.6 million. The R&D expense for that nine-month period was $75.7 million. As of September 30, 2022, Concert had approximately $148.9 million in cash, cash equivalents and investments.

Sun Pharma had net cash of $1.6 billion as of September 30, 2022.

**Advisors**

Moelis & Company LLC is serving as financial advisor to Sun Pharma, and Davis Polk & Wardwell LLP is serving as legal advisor. MTS Health Partners, L.P. and Chestnut Partners, Inc. are serving as financial advisors to Concert, and Goodwin Procter LLP is serving as legal advisor. In addition, MTS Securities, LLC (an affiliate of MTS Health Partners, L.P.) provided an opinion to the Board of Directors of Concert regarding the fairness of the offer consideration to be received by the holders of Concert common stock in the transaction, subject to the qualifications and limitations set forth therein.

**The Materially Incomplete and Misleading Solicitation Statement**

20.     The Board caused to be filed the materially incomplete and misleading Solicitation Statement with the SEC on February 2, 2023. The Solicitation Statement, which recommends that Concert stockholders tender their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts and the

analyses that support the fairness opinion provided by the Company's financial advisor, MTS Securities, LLC ("MTS Securities"); and (b) potential conflicts of interest faced by Company insiders.

***Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and the MTS Securities' Analyses.***

21. The Solicitation Statement fails to disclose material information concerning the Concert's financial forecasts, including the Company's unlevered free cash flows for years ending December 31, 2026 through December 31, 2045. Moreover, although the Solicitation Statement discloses unlevered free cash flows for the fourth quarter of fiscal year 2022 through the second quarter of fiscal year 2026 for each of the scenarios, which were purportedly utilized by MTS Securities in its *Discounted Cash Flow Analysis*, the unlevered free cash flows are described as "risk *un*adjusted." *See id.* at 39 (emphasis added). The Solicitation Statement fails to disclose the Company's risk-adjusted unlevered free cash flows for the period beginning on January 1, 2023 and ending on December 31, 2026. The Solicitation Statement must further clarify whether MTS Securities utilized "risk-adjusted" or "risk unadjusted" unlevered free cash flows in its *Discounted Cash Flow Analysis.*

22. The Solicitation Statement also fails to disclose material information concerning each case of the financial forecasts for the Company, including the line items underlying the Company's forecasted unlevered free cash flow for each of the risk-adjusted and risk unadjusted Downside, Base, and Upside scenarios.

23. The Solicitation Statement fails to disclose material information concerning the MTS Securities' financial analyses.

24. With respect to the *Discounted Cash Flow Analysis* performed by MTS Securities, the Solicitation Statement fails to disclose: (a) the Company's terminal values; (b)

the Company's tax savings from usage of federal net operating losses and future losses; and (c) the Company's fully diluted outstanding shares.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

25. The Recommendation Statement fails to disclose material information concerning Company insiders' potential conflicts of interest.

26. Specifically, the SO Statement fails to disclose whether any of Sun Pharma's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

27. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Concert's Financial Advisor," and "Background of the Offer and the Merger" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.

28. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Concert will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

29. Plaintiff repeats all previous allegations as if set forth in full.

9

30. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting Concert stockholders to tender their shares in the Tender Offer.

31. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

32. Section 14(d)(4) of the Exchange Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

33. SEC Rule 14d-9 sets forth, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

34. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

35. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Solicitation Statement false and/or misleading.

36. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Solicitation Statement,

rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

37.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and the other stockholders of Concert, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

38.     Plaintiff repeats all previous allegations as if set forth in full.

39.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

40.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement to Concert  stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.  Specifically, the Solicitation Statement misrepresented and/or omitted material facts concerning the Company's

financial forecasts, the Financial Advisors' financial analyses, and Raymond James and Company insiders' potential conflicts of interest.

41. Defendants knew that Plaintiff would rely upon their statements in the Solicitation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

42. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of Concert within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Concert, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Solicitation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Solicitation Statement.

47. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered – descriptions into which the Company directors had input.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Concert stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 10, 2023                                **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*